**NOTE CHANGES MADE BY THE COURT**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAXLITE, INC., a New Jersey Corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>ATG ELECTRONICS, INC. and DAVID WYATT,<br><br>        Defendants. | Case No. 8:20-cv-01056-MCS-ADS<br><br>**FINAL PRETRIAL CONFERENCE ORDER**<br><br>Judge: Hon. Mark C. Scarsi, U.S.D.J.<br><br>Final Pretrial Conference: April 25, 2022<br><br>Jury Trial: September 13, 2022 |
| DAVID WYATT,<br><br>        Counter-Claimant,<br><br>   vs.<br><br>MAXLITE, INC., a New Jersey Corporation,<br><br>        Counter-Defendant. | |
| ATG ELECTRONICS, INC.<br><br>        Counter-Claimant,<br><br>   vs.<br><br>MAXLITE, INC., a New Jersey Corporation,<br><br>        Counter-Defendant. | |

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

**1.**    THE PARTIES AND PLEADINGS

Plaintiff's third cause of action for conversion has been voluntarily withdrawn and is hereby dismissed. Plaintiff's fifth cause of action for Tortious Interference with Contractual Relations has been voluntarily withdrawn as to Defendant David Wyatt only and is hereby dismissed. Plaintiff MaxLite, Inc. continues this fifth cause of action for tortious interference with contract against Defendant ATG Electronics, Inc. only.

**2.**    JURISDICTION

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. §1332(a)(1), and venue is proper in this District and this Division pursuant to 28 U.S.C. §1391(b)(1).

**3.**    TRIAL DURATION

The trial is estimated to take ~~15 days.~~ **3–4 days. The Court allots MaxLite, Wyatt, and ATG each 30 minutes to provide an opening statement and 45 minutes to provide a closing argument. MaxLite shall have a total of seven hours to present evidence, and Wyatt and ATG shall have a combined total of seven hours to present evidence. Wyatt and ATG may split their evidence presentation time by mutual agreement. Time spent cross-examining witnesses counts toward the party's limit. The Court expects that the parties will not need this much time to present the case to the jury.**

**4.**    JURY TRIAL

The trial is to be a jury trial. ~~Plaintiff and Defendants shall serve and file "Agreed Upon Set of Jury Instructions and Verdict Forms" as well as the "Joint Statement re Disputed Instructions, Verdicts, etc." by no later than Friday April 8, 2022.~~ **The parties shall submit revised sealing application, a revised joint exhibit**

1

FINAL PRETRIAL CONFERENCE ORDER

1    **list, revised verdict form, and revised joint and disputed jury instructions by**

2    **August 15, 2022.**

3    **5.**     ADMITTED FACTS

4             The following facts are admitted and require no proof:

5             a.    MaxLite, Inc. ("MaxLite") is a New Jersey corporation with its

6                   principal place of business at 12 York Avenue, West Caldwell,

7                   Essex County, New Jersey 07006.

8             b.    Yon Sung ("Sung") founded MaxLite in 1993 and registered and

9                   incorporated the company as a New Jersey Corporation on

10                  February 3, 1993 under the name S K America, Inc.

11            c.    S K America, Inc. changed its name to MaxLite on August 8, 2001.

12            d.    Sung was the Chief Executive Officer of MaxLite until December

13                  2019 and is currently the Chairman of the Board.

14            e.    Spencer Bolgard ("Bolgard") was hired as MaxLite's President and

15                  Chief Operating Officer in December 2018.

16            f.    Bolgard was appointed as MaxLite's Chief Executive Officer

17                  effective January 2020 and currently holds such position.

18            g.    ATG Electronics, Inc. ("ATG") is a California corporation with its

19                  principal place of business at 9020 Rancho Park Court, Rancho

20                  Cucamonga, California 91730.

21            h.    ATG was formed by Yaxi ("Nick") Ni ("Ni") and incorporated in

22                  California on March 12, 2001.

23            i.    ATG imports, sells, and distributes energy efficient lighting

24                  products, concentrating on LED products.

25            j.    ATG manufactured lighting products until in or about 2016-2017.

26            k.    ATG utilizes email addresses with the extension

27                  @atgelectronics.com, @atgledlighting.com, or @atgled.com.

28            l.    Ni's email addresses include nickn@atgelectronics.com.

m.    Cai's email addresses include eric.c@atgelectronics.com and he sometimes appears on email exchanges as "Eric Cai" or "eric.c" or "eric eric".

n.    Arthur Tapia, a former ATG employee, opened ATG's first United States office in Lake Elsinore, California in June 2009.

o.    Ni is the current president of ATG and has been since the company's formation.

p.    Li "Eric" Cai ("Cai") has been employed with ATG since 2006 and became ATG's general manager in or about 2013-2014 and currently holds that position.

q.    Richard Matthews, ATG's Vice President of Sales in the Central Region, utilizes email addresses including rich.m@atgledlighting.com and rich.m@atgelectronics.com.

r.    David Wyatt ("Wyatt") is a resident Orange County, California.

s.    Prior to Wyatt's employment with MaxLite, Wyatt worked at Juno Lighting, Thomas Lighting, and LSI Industries.

t.    Wyatt was employed by MaxLite as Vice President of Sales, Commercial & Industrial ("C&I") Division, Western Region from March 2010 through January 2014.

u.    As MaxLite's Western Region Vice President of Sales, Wyatt was responsible for creating MaxLite's sales representative network in the Western Region for MaxLite and managing operations across thirteen (13) states comprised of Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, New Mexico, Oregon, Utah, Washington, and Wyoming.

v.    From January 2014 to April 19, 2019, Wyatt was employed by MaxLite as the Vice President of Sales, C&I Division, Pacific Southwest Region.

3

FINAL PRETRIAL CONFERENCE ORDER

w.  As the MaxLite's Pacific Southwest Region Vice President of Sales, Wyatt oversaw the Pacific Southwest Region comprised of California, Arizona, New Mexico, Nevada, and Hawaii.

x.  Wyatt worked out of MaxLite's California offices, first in Rancho Cucamonga and later in Anaheim.

y.  On April 19, 2019, MaxLite terminated Wyatt's employment and provided him with a Separation and Release Agreement (the "Separation Agreement"), which Wyatt signed on April 22, 2019.

z.  Wyatt's Separation Agreement was prepared by MaxLite and executed by Spencer Bolgard on behalf of MaxLite.

aa. Wyatt received $37,500 in consideration for the Separation Agreement, which was paid by MaxLite to Wyatt in five (5) equal installments as required by the Separation Agreement.  This amount represented ten (10) weeks of Wyatt's salary.

bb. On April 29, 2019, Wyatt sent an email to Ni furnishing his resume.

cc. On May 10, 2019, Wyatt sent Cai a copy of his MaxLite Separation Agreement.

dd. On May 15, 2019, Wyatt sent an email to Barbara Ottinger, MaxLite's Director of Human Resources, regarding his Separation Agreement to which Ms. Ottinger replied.  Wyatt forwarded such exchange to Cai.

ee. On May 28, 2019, Wyatt formed a sales representative agency named Next Gen LED Reps LLC ("Next Gen").

ff. Wyatt is the manager of Next Gen and is, and always has been, Next Gen's only employee.

gg. Next Gen entered into a Sales Marketing Agreement with ATG on June 3, 2019.

hh. Next Gen also did business with Sunpark Electronics Corporation

4

|   |   |   |
|---|---|---|
| 1 |   | in 2020 with its 2020 1099 reflecting nonemployee compensation |
| 2 |   | totaling $1,235.68. |
| 3 | ii. | Wyatt's email addresses include davidwyatt7923@att.net; |
| 4 |   | davidwyatt7923@outlook.com; dwyatt@nextgenledreps.com; |
| 5 |   | david.w@atgledlighting.com; and david.w@atgledlighting.com. |
| 6 | jj. | On June 11, 2020, MaxLite filed its Complaint in this case. |
| 7 | kk. | On July 1, 2020, MaxLite sent Cease and Desist Notices to ATG |
| 8 |   | and Wyatt. |
| 9 | ll. | On September 7, 2019, ATG and Strauss Architectural Systems |
| 10 |   | ("Strauss") entered into an Independent Sales Representative |
| 11 |   | Agreement ("ISR Agreement") for Strauss to represent ATG in |
| 12 |   | Nebraska and Iowa, which was terminated effective November 16, |
| 13 |   | 2019. |
| 14 | mm. | On October 15, 2019, ATG and Midwest Equipment Company |
| 15 |   | ("Midwest") entered into an ISR Agreement for Midwest to |
| 16 |   | represent ATG in Nebraska and Iowa. |
| 17 | nn. | On November 27, 2020, the principal of Midwest, Mark Ipsan, |
| 18 |   | terminated Midwest's representation of ATG via email |
| 19 |   | correspondence to Richard Matthews, the Regional Vice President |
| 20 |   | of Sales at ATG. |
| 21 | oo. | On August 18, 2021, ATG and Strauss entered into an ISR |
| 22 |   | Agreement for Strauss to represent ATG in Nebraska and Iowa. |
| 23 | pp. | On November 13, 2018, MaxLite and Rebate Bus entered into a |
| 24 |   | License Agreement. |
| 25 | qq. | On January 12, 2021, MaxLite and Rebate Bus entered into an |
| 26 |   | Addendum to License Agreement. |
| 27 | rr. | On April 21, 2020, Rebate Bus and ATG entered into a Pro Plan |
| 28 |   | contract. |

5

ss.    On January 15, 2021, Director of Commercial Operation at Rebate Bus, Joel Sanderson, emailed David Wyatt and terminated their relationship with ATG effective February 28, 2021.

tt.    ATG entered into a RebatePro & Rebate Assistant Subscription with BriteSwitch on February 15, 2021.

**6.    STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

a.    MaxLite designs, engineers, develops, and distributes energy efficient lighting products, concentrating on LED products.

b.    Wyatt's employment at MaxLite was expressly conditioned upon his entering into a written Proprietary Information Agreement, dated February 23, 2010, with SK America d/b/a MaxLite (the "Proprietary Agreement").

c.    Wyatt entered into a revised Proprietary Information and Non-Competition Agreement on April 17, 2015 (the "Second Proprietary Agreement").

d.    MaxLite paid Wyatt the value, if any, of his accrued but unused vacation time as of the Separation Agreement.

e.    Wyatt was provided with the right to elect the continuation of health insurance coverage under MaxLite's Group Medical Plan pursuant to COBRA.

f.    MaxLite reimbursed Wyatt for any reasonable business expenses he incurred prior to his separation from MaxLite for which Wyatt submitted the appropriate documentation.

g.    ATG paid Next Gen a flat fee of $25,000 per month from June through September 2019 followed by payment of a flat fee of $15,000 per month for every month thereafter.

6

h.  ATG also paid Next Gen commissions as follows: $5,385.82 in August 2019 $13,679.79 in September 2019; $7,820.29 in October 2019; and $460.03 for April 2020.

i.  From October 2019 through November 2020, ATG's records reflect sales generated by Midwest in the amount of $38,930.

j.  From December 2020 through August 2021, ATG's records reflect sales attributed to Midwest in the amount of $56,150.

k.  On November 13, 2020, MaxLite and Midwest entered into a Sales Representative Agreement commencing January 1, 2021.

l.  From September 2021 through November 17, 2021, ATG's records reflect sales generated by Strauss in the amount of $29,348.

m.  Rebate Bus was founded by Joe Pater in 2016 while he was an employee of MaxLite.

n.  On January 31, 2017, MaxLite and Rebate Bus entered into an Exclusive License and Commission Agreement.

o.  In 2013, Ni contacted Wyatt regarding potential employment with ATG and made Wyatt an offer of employment with ATG.

p.  In August 2013, Wyatt provided Ni with a copy of his Proprietary Agreement.

q.  In September 2013, Wyatt retained a New Jersey attorney to review his Proprietary Agreement.

r.  ATG paid a portion of the retainer for the New Jersey attorney retained by Wyatt to review Wyatt's Proprietary Agreement.

s.  Wyatt provided ATG with a copy of the New Jersey attorney's analysis of his Proprietary Agreement.

///

7

**7.**    PARTIES' CLAIMS AND DEFENSES

**Plaintiff's Claims:**

(a)    Plaintiff plans to pursue the following claims against Defendant:

**Claim 1**:    Wyatt breached his contract with MaxLite.

**Claim 2**:    Wyatt breached his implied covenant of good faith and fair dealing.

**Claim 3**:    *Intentionally omitted*.

**Claim 4**:    Wyatt breached his fiduciary duties owed to MaxLite of loyalty and confidentiality.

**Claim 5**:    ATG tortiously interfered with MaxLite's contractual relations.

**Claim 6**:    Wyatt and ATG tortiously interfered with MaxLite's prospective economic relations.

**Claim 7**:    Wyatt and ATG negligently interfered with MaxLite's prospective economic relations.

**Claim 8**:    Wyatt and ATG misappropriated MaxLite's trade secrets.

**Claim 9**:    Wyatt and ATG engaged in civil conspiracy against MaxLite to (i) commit breaches of contract and the implied covenant of good faith and fair dealing (Claims 1 and 2); (ii) commit breaches of fiduciary duties (Claim 4); (iii) tortiously interfere with contract and prospective economic relations (Claims 5 and 6); and (iv) misappropriate trade secrets (Claim 8).

(b)    MaxLite's and ATG's respective Memorandums of Contentions of Fact and Law[1] have been filed under separate cover as required by this Court's Orders Re: Jury Trial (Doc. Nos. 29, 37) as most recently extended by the Order Re: Stipulation to Extent Trial Schedule (Doc. No. 119) and L. R. 16-4. *See* Doc. Nos. 128, 138 ("Contentions of Fact and Law"). In view of the volume of contentions, including

---

[1] Wyatt failed to file A Memorandum of Contentions of Fact and Law as required by this Court. As such, Wyatt has waived the ability to rely upon same.

8

elements of claims and key evidence, as detailed by each party, the parties incorporate herein the Contentions of Fact and Law.

**Defendant ATG's Affirmative Defenses**:

(a)    ATG plans to pursue the following affirmative defenses:

**Defense 1**:    Complaint fails to state a claim upon which relief should be granted.

**Defense 2**:    *Abandoned.*

**Defense 3**:    Claims are barred because there is no privity of contract between Plaintiff and ATG.

**Defense 4**:    Complaint is barred by the terms of the severance and release agreement by and between Wyatt and Plaintiff.

**Defense 5**:    Plaintiff is estopped by its conduct or the conduct of others from seeking the relief requested in the complaint, and each cause of action stated therein.

**Defense 6**:    *Abandoned.*

**Defense 7**:    Complaint and each cause of action therein is barred, in whole or in part, by the equitable doctrine of unclean hands.

**Defense 8**:    Plaintiff's claims are barred because Plaintiff has failed to exercise reasonable care and diligence to avoid loss and to minimize damages and, therefore, may not recover for losses which could have been prevented by reasonable efforts on their part, or by expenditures that might reasonably have been made.

**Defense 9**:    Plaintiff [sic] claims are barred because ATG did not interfere with Plaintiff's business.

**Defense 10**: *Abandoned.*

**Defense 11**: Plaintiff's claims are barred because ATG did not tortiously interfere with Plaintiff's prospective or actual economic advantage.

9

**Defense 12**: Plaintiff's claims are barred because ATG did not interfere with Plaintiff's contracts.

**Defense 13**: Plaintiff's claims are barred by their own wrongful conduct.

**Defense 14**: ATG alleges that no act or omission by ATG constitutes the proximate or legal cause of damages.

**Defense 15**: *Abandoned*.

**Defense 16**: *Abandoned*.

**Defense 17**: Plaintiff has not suffered any "actual damages" prerequisite to the recovery and any punitive damages, and therefore no punitive damages can be recovered.

**Defense 18**: The conduct of defendant does not rise to the level by which punitive damages are warranted and based thereon, the claim for punitive damages should be denied and stricken from the complaint based upon a failure to plead adequate facts giving rise to a cause of action as to ATG.

**Defense 19**: Persons other than this Defendant caused or contributed to the damages claimed to have been suffered by Plaintiff. Therefore, any award made in favor of Plaintiff in this case must be divided between such persons so that each pays only his, her or its fair share in relationship to his, her or its amount of fault.

**Defense 20**: The manner in which Plaintiff conducted the affairs relative to the events described in the Complaint caused or contributed to any damages complained of in this case.

**Defense 21**: The trade secrets claimed by Plaintiff were independently developed by Defendant without the use or knowledge of the claimed trade secrets.

**Defense 22**: The claimed trade secrets are either known to the public, and/or can be ascertained through the use of public information.

10

**Defense 23**: Plaintiff failed to take all reasonable steps to protect or keep the claimed trade secret information secret.

**Defense 24**: Plaintiff's recovery, if any, must be equitably reduced and offset by the amount of damages Plaintiff owes to Defendant as a result of its own tortious conduct directed at Defendant.

**Defense 25**: ATG currently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, defenses available. ATG expressly reserves its right to assert additional affirmative defenses in the event discovery indicates they would be appropriate.

(b)    In view of the volume of contentions, including elements of claims and key evidence, as detailed by each party, the parties incorporate herein the Contentions of Fact and Law.

**Defendant ATG's Counterclaims**:

(a)    ATG plans to pursue the following counterclaims against Plaintiff:

**Counterclaim 1**: Intentional    Interference    with    ATG's    Contractual Relationships with Rebate Bus ("Rebate") and Midwest Equipment Company ("Midwest").

**Counterclaim 2**: Tortious Interference with ATG's Prospective Business Advantage with Rebate and Midwest.

(b)    In view of the volume of contentions, including elements of claims and key evidence, as detailed by each party, the parties incorporate herein the Contentions of Fact and Law.

**Plaintiff's Affirmative Defenses:**

(a)    The elements required to establish Plaintiff's affirmative defenses are:

**Defense 1**:  *Abandoned.*

**Defense 2**:  *Abandoned.*

**Defense 3**:  *Abandoned.*

11

FINAL PRETRIAL CONFERENCE ORDER

**Defense 4**:  ATG's Counterclaims are barred, in whole or in part, by the doctrines of waiver, laches, unclean hands, and/or estoppel.

**Defense 5**:  ATG's Counterclaims are barred, in whole or in part, because ATG failed to exercise reasonable care/diligence to avoid loss/damages.

**Defense 6**:  Privilege to Protect Own Financial Interest.

**Defense 7**:  ATG's Counterclaims are barred, in whole or in part, because there is no valid underlying contract(s).

**Defense 8**:  *Consolidated – see Defense 6 above.*

**Defense 9**:  ATG's Counterclaims has failed to mitigate and/or minimize any damages it may have suffered.  *Remainder of defense as pled abandoned.*

**Defense 10**: *Abandoned.*

**Defense 11**: ATG's Counterclaims are barred, in whole or in part, because no act or omission by MaxLite constitutes the proximate or legal cause of any of ATG's alleged damages.

**Defense 12**: ATG's Counterclaims are barred, in whole or in part, because any damages allegedly suffered by ATG are the result of its own acts, conduct, omissions, or the acts, conduct, or omissions of third parties

**Defense 13**: ATG's Counterclaims are barred, in whole or in part, because to the extent ATG lost business or contracts with it were terminated, same was as a result of ATG's own acts, conduct, omissions, or the acts, conduct, or omissions of third parties.

**Defense 14**: ATG's Counterclaims are barred, in whole or in part, because MaxLite is not responsible for acts, conduct, or omissions of third parties.

**Defense 15**: *Consolidated – see Defense 6 above.*

12

FINAL PRETRIAL CONFERENCE ORDER

**Defense 16**: ATG's recovery, if any, should be reduced and offset by damages owed to MaxLite by ATG.

**Defense 17**: *Abandoned.*

**Defense 18**: *Abandoned.*

**Defense 19**: *Abandoned.*

**Defense 20**: ATG's claim for attorneys' fees, expenses, and costs is barred as same is not provided for in contract or by law.

**Defense 21**: *Abandoned.*

b.    The elements of MaxLite's affirmative defenses were not set forth in either party's Contentions of Fact and Law and therefore cannot be incorporated by reference. As such, the elements required to establish MaxLite's affirmative defenses are set forth herein as follows:

**Defense 4**: Unclean Hands

    i.    That ATG's conduct is inequitable; and

    ii.    That ATG's conduct relates to the subject matter of its claims.

**Defense 5**: Failure to Exercise Due Care

Negligence is the failure to use reasonable care to prevent harm to oneself or to others. Jury must decide how a reasonably careful person would have acted in ATG's situation.

**Defense 6, 8, 15**: Privilege to Protect Own Financial Interest

    i.    That MaxLite had a legitimate economic interest in the contractual relations;

    ii.    That Plaintiff MaxLite acted only to protect its own economic interest;

    iii.    That Plaintiff MaxLite acted reasonably and in good faith to protect it; and

    iv.    That Plaintiff MaxLite used appropriate means to protect it.

**Defense 7**: No Valid Contract

13

FINAL PRETRIAL CONFERENCE ORDER

i.    That the contract terms were clear enough that the parties could understand what each was required to do;

ii.    That the parties agreed to give each other something of value; and

iii.    That the parties agreed to the terms of the contract.

**Defense 9**: Failure to Mitigate

ATG is not entitled to recover damages for harm that MaxLite proves ATG could have avoided with reasonable efforts or expenditures.

**Defense 11**: MaxLite Not a Substantial Factor

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

**Defense 12:** Apportionment

i.    That Defendant Wyatt was negligent; and

ii.    That the negligence of Defendant Wyatt was a substantial factor in causing Defendant ATG Electronics, Inc.'s harm.

**Defense 13**: Comparative Fault, MaxLite must prove:

i.    That Defendant ATG Electronics, Inc. was negligent; and

ii.    That Defendant ATG Electronics, Inc.'s negligence was a substantial factor in causing its harm.

**Defense 14**: Third Parties

ATG's alleged harm was caused by a party other than MaxLite.

**Defense 16:** Offset

Any amount recovered by ATG must be offset by the amount ATG owes to MaxLite

**Defense 20**: No Attorneys' Fees

14

No contractual or statutory authority provides for the recovery by ATG of counsel fees from MaxLite.

**8.**  REMAINING TRIABLE ISSUES

By jointly submitting the following triable issues, Defendants do not waive their objection to the Separation and Release Agreement or causes of actions stemming from it. Similarly, MaxLite does not waive its objections to evidence nor any of legal arguments or disputes as detailed herein and in the relate trial documents.

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues remain to be tried:

- Whether Wyatt breached his Separation and Release Agreement;
- Whether MaxLite was harmed by that breach and if so, to what extent (if any);
- Whether Wyatt breached the implied covenant of good faith and fair dealing and if so, whether MaxLite suffered harm as a result and to what extent (if any);
- Whether Wyatt owed a fiduciary duty to MaxLite, if he breached that duty, and what harm, if any, MaxLite suffered as a result;
- Whether ATG interfered with MaxLite's Separation and Release Agreement with Wyatt and if so, to what extent was MaxLite harmed and was ATG's conduct a substantial factor in causing MaxLite harm;
- Whether ATG and/or Wyatt interfered with MaxLite's perspective economic relations, either intentionally or negligently, and if/to what extent MaxLite was harmed as a result;
- Whether ATG and/or Wyatt misappropriated MaxLite's trade secrets, including all elements of the claim, and if so, to what extent MaxLite was harmed;
- Whether Wyatt and ATG conspired to and did harm MaxLite, and if so, to what extent (if any) MaxLite was harmed;

15

FINAL PRETRIAL CONFERENCE ORDER

- Whether the parties have proven their respective affirmative defenses;
- Whether the harm to MaxLite should be offset by one or more of ATG's affirmative defenses;
- Whether MaxLite intentionally interfered with ATG's contract, including all elements of the claim, with Midwest and/or Rebate Bus and if so, whether and to what extent ATG was harmed as a result;
- Whether ATG had prospective business with Rebate Bus or Midwest, if MaxLite interfered with same, and to what extent (if any) ATG was harmed as a result;
- Whether the harm to ATG, if any, should be offset by one or more of MaxLite's affirmative defenses; and
- The parties reserve the right to revise and/or supplement this section with any additional remaining triable issues as may arise or may remain following the Court's rulings on the pending motions *in limine* and Daubert motions.

**9.**    DISCOVERY

All discovery is complete.

**10.**    DISCLOSURES AND EXHIBIT LIST

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made. The joint exhibit list of the parties was filed under separate cover as required by L.R. 16-6.1 on April 1, 2022 (Doc. No. 140). In view of the volume of exhibits marked by each party, the parties incorporate in the "Revised Joint Exhibit List" being filed on April 8, 2022 reflecting the parties' agreements regarding admitted exhibits, and all objections, including the grounds therefor. **The Court orders the parties to submit a revised joint exhibit list by August 15, 2022.**

**11.**    WITNESS LISTS

Witness lists of the parties have been filed with the Court as of April 1, 2022 (Doc. Nos. 116, 118, 139). Only the witnesses identified on the lists, subject to this

16

FINAL PRETRIAL CONFERENCE ORDER

Court's rulings on the motions *in limine* ~~listed below~~, will be permitted to testify (other than solely for impeachment).

As set forth in Paragraph 12, MaxLite objects to the testimony of the three (3) witnesses listed on Wyatt's Witness List (Doc. No. 139) as set forth in MaxLite's Motions *in Limine* Nos. 1 and 3.

In accordance with Local Rule 16-5, MaxLite hereby states its objection to the ATG's proposed readings of the depositions of following witnesses found on ATG's Witness List (Doc. No. 118):

    a.    <u>Spencer Bolgard</u> (by way of Transcript of November 12, 2021 Deposition):  It is MaxLite's position that, even if Mr. Bolgard's deposition transcript may be read under *Fed. R. Evid.* 32(a)(3) as MaxLite's Chief Executive Officer, same should be precluded under *Fed. R. Evid.* 403 as causing undue delay, wasting time, and/or needlessly presenting cumulative evidence as Mr. Bolgard will be present and testifying at trial.

    b.    ATG disagrees as pursuant to FRCP 32(a)(3), Deposition of Party, Agent, or Designee. *An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's **officer**, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4).*  Mr. Bolgard is the Chief Executive Officer of MaxLite and therefore ATG may use his deposition for any purpose. In addition, ATG provided Bolgard's deposition as required by L.R. 16-2.7 on March 25, 2022.

    c.    ATG has withdrawn its intention to read deposition testimony of Mr. Alonzi, Ms. Langley, and Ms. Galleher[2] into the record subject to the use for an impeachment purposes.

---

[2] ATG reserves its right to utilize Ms. Galleher's declarations/certifications as part of the public record as identified in the Proposed Joint Exhibits subject to any objection of MaxLite and/or Wyatt.

17

FINAL PRETRIAL CONFERENCE ORDER

**12.** <u>MOTIONS IN LIMINE AND DAUBERT MOTIONS:</u>

**<u>The Court resolves motions in limine and *Daubert* motions in a concurrently filed order.</u>** ~~Motions *in Limine* or law and motion matters have been filed with the Court as of April 1, 2022, responses to shall be filed April 8, 2022 pursuant to this Court's Order. The parties have met and conferred on the motions *in limine*. The following motions *in limine* and Daubert motion, and no others, are pending or contemplated:~~

~~**Plaintiff's Motions**:~~

a. ~~Motion *in Limine* No. 1: To preclude Wyatt from proposing jury instructions and from presenting evidence as to his unpled claims and undisclosed evidence. MaxLite also seeks sanctions and remedies against Wyatt for egregious failures to comply with the applicable rules and Court Orders. (Doc. No. 129).~~

b. ~~Motion *in Limine* No. 2: To allow MaxLite to treat Wyatt and ATG employees/former employees as "hostile" witness at trial. (Doc. No. 130).~~

c. ~~Motion *in Limine* No. 3: To exclude Richard Green from being called as a witness at trial because he was never identified as a witness during discovery. (Doc. No. 131). *MaxLite seeks to amend this motion to include the exclusion of Gabriel Peredo and Richard Watson because these witnesses were similarly not identified during discovery nor during the L. R. 16 meeting of counsel. As such, MaxLite was deprived of the opportunity to include these witnesses in its already filed motion because Wyatt failed to identify same prior to April 1, 2022 – the date upon which the motions in limine were due and filed.*~~

d. ~~Motion in Limine No. 4: To preclude ATG from seeking "equitable relief" since ATG never before advised it was seeking to enjoin MaxLite from working with Rebate Bus and/or Midwest Equipment. (Doc. No. 132).~~

18

e.     ~~*Daubert Motion*: To bar ATG's proposed financial expert from testifying at trial. (Doc. No. 133).~~

**~~Defendant ATG's Motions~~:**

a.     ~~Motion *in Limine* No. 1: To apply California law instead of New Jersey law. (Doc. No. 134).~~

b.     ~~Motion *in Limine* No. 2: To preclude any reference to the patent infringement case between MaxLite and ATG. (Doc. No. 135).~~

c.     ~~Motion *in Limine* No. 3: To remove the "Confidential" or "Attorneys' Eyes Only" designations from the exhibits.  (Doc. No. 136).~~

d.     ~~Motion *in Limine* No. 4: To preclude the jury from seeing the Separation and Release Agreement which is the contract MaxLite alleges, among other things, Wyatt breached.  (Doc. No. 137)~~

e.     ~~*Daubert* Motion: *ATG filed a Motion to Seal its Daubert Motion on March 25, 2022. Thereafter, ATG's local counsel inadvertently failed to refile the same on April 1, 2022 with the Court. However, MaxLite's counsel was in receipt of ATG's un redacted Daubert Motion prior to April 1, 2022 on March 28, 2022 so no prejudice exists. This oversight was rectified on April 5, 2022 by ATG refiling its Daubert Motion. No changes were made to the Daubert Motion which was initially filed on March 25, 2022. ATG would not object to providing MaxLite an additional two (2) days to oppose such Motion should the need arise.*~~

**13.**    <u>BIFURCATION</u>

Bifurcation is not requested and therefore not ordered.

However, the parties met and conferred and have agreed that, in the event any party succeeds on any of its respective affirmative claims and/or affirmative defenses which allow for attorney's fees, such fee awards and the amounts of any such fees shall be decided by way of motion to the Court following conclusion of the trial.

///

**14.** <u>ADMISSIONS</u>

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

**IT IS SO ORDERED.**

Dated: August 7, 2022

_____

MARK C. SCARSI

UNITED STATES DISTRICT JUDGE

FINAL PRETRIAL CONFERENCE ORDER