UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MaxLite, Inc.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ATG Electronics, Inc., et al.,<br><br>　　　　Defendants. | Case No. 8:20-cv-01056-MCS-ADS<br><br>**ORDER RE: MOTIONS IN LIMINE, RELATED APPLICATIONS, AND OTHER PRETRIAL MATTERS (ECF NOS. 121, 124, 129–37, 142, 145, 170)** |

Plaintiff and Counterclaim Defendant MaxLite, Inc. moves in limine: (1) to preclude Defendant and Counterclaimant David Wyatt from proposing jury instructions and offering evidence or witnesses to support his counterclaim at trial, and for sanctions as to Wyatt, (MaxLite's MIL No. 1, ECF No. 129); (2) to allow counsel to treat certain witnesses as hostile on direct examination, (MaxLite's MIL No. 2, ECF No. 130); (3) to exclude Richard Green from testifying as a witness at trial, (MaxLite's MIL No. 3, ECF No. 131); (4) to prohibit Defendant and Counterclaimant ATG Electronics, Inc. from seeking equitable relief from the jury, (MaxLite's MIL No. 4, ECF No. 132); and (5) to exclude Gabriel Peredo and Richard Watson from testifying at trial, (MaxLite's MIL No. 5, ECF No. 170). MaxLite also seeks to exclude ATG's expert Robert A. Bonavito and to bar his testimony and reports from being presented at trial. (MaxLite's *Daubert* Mot., ECF No. 133-1.) ATG opposes MaxLite's second motion, (ATG's Opp'n to MaxLite's MIL No. 2, ECF No. 153), its fourth motion, (ATG's Opp'n to MaxLite's MIL No. 4, ECF No. 154), and its fifth motion, (ATG's Opp'n to MaxLite's MIL No. 5, ECF No. 172). Wyatt opposes MaxLite's first motion, (Wyatt's Opp'n to MaxLite's MIL No. 1, ECF No. 157), its second motion, (Wyatt's Opp'n to MaxLite's MIL No. 2, ECF No. 158), its third motion, (Wyatt's Opp'n to MaxLite's MIL No. 3, ECF No. 159), and its fifth motion, (Wyatt's Opp'n to MaxLite's MIL No. 5, ECF No. 171).

ATG moves in limine: (1) to preclude the use of New Jersey law in the case at bar, (ATG's MIL No. 1, ECF No. 134); (2) to preclude any reference to a patent infringement case between ATG and MaxLite, which has since settled, (ATG's MIL No. 2, ECF No. 135); (3) to preclude MaxLite from using copies of marked documents on best evidence grounds, (ATG's MIL No. 3, ECF No. 136); and (4) to preclude evidence concerning restrictive covenants in Wyatt's Separation and Release Agreement, (ATG's MIL No. 4, ECF No. 137). ATG also moves to exclude the testimony of MaxLite's economic damages expert, Michael Saponara. (ATG's *Daubert* Mot., ECF No. 123-1.) MaxLite opposed all of ATG's motions. (MaxLite's Opp'n to ATG's MIL No. 1, ECF No. 147; MaxLite's Opp'n to ATG's MIL No. 2, ECF No. 149;

MaxLite's Opp'n to ATG's MIL No. 3, ECF No. 150; MaxLite's Opp'n to ATG's MIL No. 4, ECF No. 151; MaxLite's Opp'n to ATG's *Daubert* Mot., ECF No. 144.)

The Court heard argument on the motions at the final pretrial conference on April 25, 2022. The Court issued preliminary rulings on the motions from the bench, took the motions under submission, and continued the jury trial from May 10, 2022 to September 13, 2022. (Mins., ECF No. 169.)[1]

## I. BACKGROUND

MaxLite is a New Jersey company that designs, engineers, and sells energy-efficient lighting products. Wyatt is a former MaxLite employee who worked as a Vice President of Sales in MaxLite's Commercial and Industrial Division from 2010 to April 19, 2019. On his termination date, Wyatt signed a confidential Separation and Release Agreement (the "Agreement") with MaxLite, wherein he promised, *inter alia*, not to share MaxLite's nonpublic, proprietary, or confidential information.

In May 2019, Wyatt allegedly sent a copy of the Agreement to ATG and, via an agreement he reached with ATG, formed a sales representative agency called Next Gen LED Reps LLC. Next Gen entered into a Sales Marketing Agreement with ATG on June 3, 2019.

On June 11, 2020, MaxLite filed suit against ATG and Wyatt, claiming that Wyatt breached the Agreement by sharing MaxLite's proprietary information with ATG. MaxLite claims ATG intentionally interfered with the Agreement and that ATG and Wyatt, together, have interfered with MaxLite's business, misappropriated MaxLite's trade secrets, and conspired to harm MaxLite.

Wyatt counterclaimed against MaxLite on July 29, 2020, seeking attorney's fees in the defense of the claims. ATG subsequently filed a counterclaim against MaxLite on June 3, 2021. ATG claims MaxLite interfered with ATG's contracts and prospective

---

[1] Maxlite filed its fifth motion in limine after the final pretrial conference. The Court deems oral argument unnecessary. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

business relations, including by inducing certain companies to cease working with ATG. ATG further contends that the Agreement is unenforceable, that the information MaxLite alleges is covered by the Agreement is not confidential and/or protectable as trade secrets, and that MaxLite has acted in bad faith in an attempt to unfairly compete with it.

For trial, MaxLite asserts eight claims: (1) breach of contract (against Wyatt), (2) breach of implied covenant of good faith and fair dealing (against Wyatt), (4) breach of fiduciary duties of loyalty and confidentiality (against Wyatt), (5) tortious interference with contractual relations (against ATG), (6) tortious interference with prospective economic relations (against Wyatt and ATG), (7) negligent interference with prospective economic relations (against Wyatt and ATG), (8) misappropriation of trade secrets (against Wyatt and ATG), and (9) civil conspiracy (against Wyatt and ATG).[2] (Proposed FPTCO 7–8, ECF No. 162-1.) Wyatt asserts one counterclaim for attorney's fees in defense of MaxLite's action. (Wyatt's Answer & Countercl., ECF No. 22.) ATG asserts two counterclaims against MaxLite: (1) intentional interference with contractual relationships and (2) tortious interference with prospective business advantage. (Proposed FPTCO 11.) The parties engaged in voluminous discovery and multiple other lawsuits, including a patent infringement case in this district, *MaxLite, Inc. v. ATG Electronics Ltd.*, No. 5:20-cv-02648-JWH-SP, which settled in December 2021, and a suit in New Jersey.

## II. MOTIONS IN LIMINE

### A. MaxLite's Motion In Limine No. 1

MaxLite seeks to preclude Wyatt from proposing jury instructions, to preclude him from providing testimony as to his counterclaim, and to sanction him for his pretrial conduct. (MaxLite's MIL No. 1, at 2–9.) ATG does not oppose the motion. Wyatt claims he does not seek to propose any jury instructions or introduce any evidence of

---

[2] The Court preserves the numbering of claims the parties used in their filings.

4

his counterclaim at trial and that sanctions are not warranted because he has been cooperative in all pretrial proceedings. (Wyatt's Opp'n to MaxLite's MIL No. 1, at 2–3.)

The Court denies the motion in part and defers decision on the motion in part. First, a motion in limine is an improper vehicle for seeking dismissal of a counterclaim. Without opining on the adequacy of the pleading of Wyatt's counterclaim, the Court notes that MaxLite did not file a motion to dismiss or any other dispositive motion targeting Wyatt's counterclaim. MaxLite declined to challenge Wyatt's counterclaim for nearly two years, and it should face the consequence of its tactical decision to let the claim proceed to the trial stage. (*Compare* Wyatt's Answer & Countercl. (filed July 29, 2020), *with* MaxLite's MIL No. 1 (filed Apr. 1, 2022); *see* Order Re: Jury Trial § II(A)(1), ECF No. 37 ("Motions in limine should not be disguised motions for summary adjudication of issues.").) Second, Wyatt represents that he does not intend to present any witnesses or evidence not disclosed during discovery, and he claims that "[t]he parties have now unanimously agreed to make fees and costs a post-trial motion and not a jury question." (Wyatt's Opp'n to MaxLite's MIL No. 1, at 2–3.) Accordingly, MaxLite's motion appears to be mooted by the parties' mutual agreement.[3]

The Court defers decision on MaxLite's motion for monetary sanctions against Wyatt. Again, a motion in limine is not an appropriate vehicle for the relief MaxLite requests. The question of monetary sanctions for Wyatt's pretrial conduct is not germane to setting guidelines and resolving evidentiary disputes for the imminent jury trial. The Court authorizes MaxLite to submit a separate motion for sanctions relating to Wyatt's pretrial conduct within 21 days of conclusion of trial.

---

[3] Notwithstanding, Wyatt has not preserved his counterclaim as an independent claim in the Proposed Final Pretrial Conference Order, which is designed to replace the pleadings. (*See* Proposed FPTCO 19.) The Court renders no opinion as to whether Wyatt may maintain such a claim after the Court enters a Final Pretrial Conference Order.

5

### B. MaxLite's Motion In Limine No. 2

MaxLite seeks to treat David Wyatt, Li "Eric" Cai, Richard Matthews, and Arthur Tapia as hostile witnesses at trial pursuant to Federal Rule of Evidence 611(c)(2). (MaxLite's MIL No. 2, at 2–4.) ATG contends that MaxLite improperly seeks to name as hostile "anyone ever associated with ATG," and that "MaxLite should be required to make some threshold showing that Matthews, Cai and Tapia" are subject to the Rule 611 exception. (ATG's Opp'n to MaxLite's MIL No. 2, at 2–3.) Wyatt claims he and ATG "are cooperating and assert no conflicts of interest"; he otherwise simply "joins the opposition by ATG." (Wyatt's Opp'n to MaxLite's MIL No. 2, at 2.)

The motion is granted. First, Wyatt is an "adverse party" subject to the Rule 611(c)(2) exception. Second, MaxLite has made a threshold showing that Matthews, Cai, and Tapia may be characterized as hostile witnesses. MaxLite indicates that ATG's counsel represented Tapia, Matthews, and Cai at their depositions and will represent them at trial as well. (MaxLite's MIL No. 2, at 3–4.) Matthews, Cai, and Tapia's positions in ATG—General Manager, Regional Vice President, and Sales Manager, respectively—indicate their status as officers, directors, or managing agents of ATG. *See* Fed. R. Evid. 611(c), advisory committee's note on proposed rules. Notwithstanding Matthews's purported retirement from ATG, for the purpose of this litigation, these three witnesses are "identified with an adverse party" within the meaning of Rule 611(c)(2). *See SEC v. Moshayedi*, No. SACV 12-01179 JVS (MLGx), 2013 WL 12129282, at *11–13 (C.D. Cal. Nov. 20, 2013) (listing numerous factors supporting the conclusion that witnesses were identified with an opposing party, including that the witnesses were represented by the defendant's counsel and worked at, or had worked at, the defendant's company).

### C. MaxLite's Motion In Limine No. 3

MaxLite moves to exclude Richard Green from testifying at trial because no party disclosed him as a potential witness in initial or supplemental disclosures. (MaxLite's MIL No. 3, at 2–4.) Wyatt opposes the motion, claiming that he "identified Richard

6

Green" on November 16, 2021 when he was deposed, and that his "deposition testimony is conclusive that MaxLite was notified that Richard Green had substantive information." (Wyatt's Opp'n to MaxLite's MIL No. 3, at 3.) ATG did not oppose this motion.

The motion is granted. Wyatt does not deny MaxLite's contention that he never disclosed Green on any witness list or disclosure. He provides no legal basis to support his argument that merely referencing Green in response to questions asked during his deposition gave other parties adequate notice that Green could be a trial witness. Wyatt fails to show that his failure to disclose Green was substantially justified or harmless. *See Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 741 (9th Cir. 2021). Green may not be called at trial. Fed. R. Civ. P. 37(c)(1).

### D. MaxLite's Motion In Limine No. 4

MaxLite moves to preclude ATG from seeking equitable relief as a remedy for its counterclaims and from presenting equitable issues to the jury. MaxLite claims ATG's pleadings contain "no demand for any particular or defined equitable relief" in violation of Rule 8, and that ATG did not reference its desired equitable relief until after discovery closed, via an email sent on March 23, 2022. (MaxLite's MIL No. 4, at 3–6.) ATG counters that it provided sufficient notice because its counterclaim stated that ATG is seeking "other relief as if [sic] deemed equitable, appropriate, and just by this Court." (ATG's Opp'n to MaxLite's MIL No. 4, at 3 (quoting ATG's Answer & Countercl. ECF No. 44).)

The Court grants the motion in part and defers resolution of the motion in part. Even assuming ATG timely and adequately asserted its right to equitable relief, equitable claims are not triable to a jury and need not be decided by a court until after a jury resolves the legal claims. *See Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016). The parties do not raise any issues specific to equitable relief in their proposed jury instructions and jury verdict. Unless the parties identify some issue particular to the equitable claims that needs to be presented to the jury, the Court need not resolve

7

whether ATG properly asserted such claims until after the jury trial. The parties should not present to the jury argument or evidence specific to claims for equitable relief given that the Court will be resolving them.

### E. MaxLite's Motion In Limine No. 5

MaxLite seeks to exclude the witness testimony of Richard Watson and Gabriel Peredo at trial. (MaxLite's MIL No. 5, at 2–5.)

The motion is granted. Both ATG and Wyatt dedicate much discussion toward establishing who Watson and Peredo are and why their testimony is important, but neither party denies that these witnesses were not disclosed during discovery. (*See, e.g.*, ATG's Opp'n to MaxLite's MIL No. 5, at 2–3 (claiming MaxLite knew of the witnesses as early as June 2020); Wyatt's Opp'n to MaxLite's MIL No. 5, at 4 (admonishing MaxLite for not requesting to depose Watson and Peredo before the discovery deadline).) Notwithstanding MaxLite's purported knowledge of the existence of these individuals, Wyatt and ATG deprived MaxLite of notice that they would be witnesses in this action by failing to include them in their disclosures. Defendants fail to meet their burden to show that their failure to disclose Watson and Peredo was justified or harmless. These witnesses will not be permitted to testify at trial. Fed. R. Civ. P. 37(c)(1).

### F. MaxLite's *Daubert* Motion

MaxLite seeks to disqualify ATG's proposed damages expert, Robert A. Bonavito, from testifying and to bar the use of his reports at trial. (MaxLite's *Daubert* Mot. 1, 3.) Neither ATG nor Wyatt opposed this motion. The Court grants the motion on this basis. C.D. Cal. R. 7-12.

The Court also grants the motion on its merits. Federal Rule of Evidence 702 authorizes "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide an opinion if the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." For an expert's opinion to be admissible, the expert's opinion must be "based on sufficient

facts or data," the testimony must be the "product of reliable principles and methods," and the expert must have "applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Federal courts have a gatekeeping responsibility to engage in objective screening to ensure that evidence "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (clarifying that the gatekeeping obligation "applies not only to testimony based on 'scientific knowledge,' but also to testimony based on 'technical' and 'other specialized' knowledge"). The proponent of the expert testimony bears the burden of proving its admissibility. *United States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008).

Bonavito's report is based on the allegation that Rebate Bus prematurely canceled its contract with ATG based on MaxLite's interference, (MaxLite's *Daubert* Mot. 7–12), but Bonavito later admitted that the applicable contract was for a six-month term that expired three months prior to the alleged interference. (Ferro Decl. Ex. 1, at 1, 4–8, ECF No. 125-1; Ferro Decl. Ex. 3a, at 263–65.) Bonavito's damages calculations are based on unverified sources. For example, he cites the deposition testimony of Wyatt and Cai to inform his damage calculation estimates, but neither witness actually provided the numerical amounts he used. In electing not to oppose the *Daubert* motion, ATG fails to meet its burden to prove that the evidence is admissible. *See, e.g.*, *John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (deeming issue waived where party "failed to develop any argument"); *87.98 Acres of Land*, 530 F.3d at 904. Thus, the Court excludes Bonavito as an expert under Rule 702.

### G. ATG's *Daubert* Motion

ATG seeks to exclude Michael Saponara's expert testimony and report on MaxLite's alleged economic damages. (ATG's *Daubert* Mot. 4–8.) MaxLite opposes the motion on the basis that it is late and that Saponara's testimony is reliable.

(MaxLite's Opp'n to ATG's *Daubert* Mot. 2–15.)[4]

The motion is granted. Saponara lacks sufficient facts or data to provide reliable expert testimony. He did not rely on material facts and makes speculative conclusions about MaxLite's alleged lost profits. Saponara admits that, in order to discern ATG's "New Customers," he simply took the data provided by ATG in its Sales by Customer Report and added the term "new customers" beginning in June 2019, when Wyatt arrived. (Jasinski Decl. Ex. B, at 155, 160–62, ECF No. 122-3.) This is particularly concerning given that the "New Customer" category is the basis for Saponara's calculation of "MaxLite's estimated lost profits" for the period of June 1, 2019 through November 17, 2021. (Jasinski Decl. Ex. A, at 11–12, ECF No. 122-2.) Stated plainly, Saponara did not identify whether ATG had past contracts or relationships with the customers or distinguish between customers and distributors; instead, he assumed that MaxLite's damages start from the day that Wyatt began working at ATG. (*Compare id.* at 12–14, *and id.* Tab 1, Exs. 1–3 (basing all calculations off of "ATG's Sales to New Customers"), *with id.* Tab 1, Ex. 4 (ATG's Sales by Customer by Month Report listing 20 pages of customers, by name and sales dates, without otherwise distinguishing between new and old customers).)

MaxLite dedicates much discussion to proving that Saponara used reliable methods and sufficient data, but it does not sufficiently address the gateway issue regarding how Saponara discerned who the new customers were. (*See, e.g.*, MaxLite's Opp'n to ATG's *Daubert* Mot. 6–7, 9–10.) Although Saponara used records provided by ATG to generate his opinion, he admitted that he created the designation "new customers" based on looking at the records, despite not fully knowing how ATG defines the term "customer." (*See, e.g.*, Jasinski Decl. Ex. B, at 85, ECF No. 122-3 ("Whether the customer—whether it fits the definition of sales rep or general contractor, the end

---

[4] The Court admonishes ATG for failing to comply with the Court's scheduling order by filing the motion four days late. However, in the interest of justice, the Court considers the motion on its merits.

user or some kind of distributor, I'm not sure."); Farro Decl. Ex. 5, at 112–17, ECF No. 143-1 (explaining that Saponara assumed any purchaser listed on the sales report was a "customer," and that he assumed any customer who first appeared on the sales report "beginning in June of 2019" was a "new customer").) Saponara assumed without justification that every entity first appearing on the sales report beginning in June 2019 was new to ATG and that each was a customer whose business Wyatt had a hand in taking from MaxLite. MaxLite offers that "Wyatt is involved in every facet of ATG business" and that he "has an impact, whether directly or indirectly, on every new sale generated at ATG" since he was hired. (MaxLite's Opp'n to ATG's *Daubert* Mot. 12–14.) But Saponara's opinion on damages rests upon unsupported assumptions about the identity of new customers. *See Bakst v. Cmty. Mem'l Health Sys., Inc.*, No. CV 09-08241 MMM (FFMx), 2011 WL 13214315, at *20 (C.D. Cal. Mar. 7, 2011) (collecting cases for the proposition that an expert's "damages calculation . . . based entirely on factual assumptions that are entirely unsupported in the record" may be excluded). His opinion will not help the jury understand the evidence or determine the measure of damages; instead, his testimony would only confuse the issue. The Court concludes that Saponara's opinion is not based on sufficient facts or data and excludes him and his report from trial proceedings under Rule 702.

### H.     ATG's Motion In Limine Nos. 1 and 4

ATG moves to: (1) preclude the use of New Jersey law on MaxLite's state law claims, and instead apply California law, on the basis that the relevant Agreement provisions violate fundamental California choice-of-law policies; and (2) preclude evidence relating to the Agreement at trial. (ATG's MIL No. 1, at 5–9; ATG's MIL No. 4, at 8–10.) MaxLite opposes the motions on the basis that the Agreement includes a valid choice-of-law clause plainly stating that any dispute arising from it would be governed by New Jersey law. (MaxLite's Opp'n to ATG's MIL No. 1, at 3–9; MaxLite's Opp'n to ATG's MIL No. 4, at 1–4.) Although the parties should have submitted their dispute to the Court well before trial, the Court examines the motions

11

on the merits.

Both motions are denied. A federal district court considering state law claims applies the choice-of-law rules of the states in which it sits. *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). "California law reflects a strong public policy favoring enforcement of freely negotiated choice-of-law clauses." *Colaco v. Cavotec SA*, 25 Cal. App. 5th 1172, 1188 (2018) (citing *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 462, 464–65 (1992)). Under *Nedlloyd*, the law chosen in the provision will be applied unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Nedlloyd*, 3 Cal. 4th at 465 (quoting Restatement (Second) of Conflict of Laws § 187(2)) (cleaned up).

The Agreement specifies that it is governed by New Jersey law. (Compl. Ex. A ("Agreement"), § 18(f), ECF No. 1.) MaxLite's principal place of business is in New Jersey. (Compl. ¶ 1.) New Jersey thus has a substantial relationship to the contracting parties. *See Healy v. Qognify, Inc.*, No. 2:18-cv-06318-ODW (MRW), 2019 WL 1242843, at *4 (C.D. Cal. Mar. 15, 2019) ("A substantial relationship between the chosen state and the contracting parties exists if 'one of the parties is domiciled in the chosen state.'" (quoting *Nedlloyd*, 3 Cal. 4th at 467)); *see, e.g.*, *Nat'l Seating & Mobility, Inc. v. Parry*, No. C 10-02782 JSW, 2012 U.S. Dist. LEXIS 98384, at *14 (N.D. Cal. July 16, 2012) ("NSM's principal place of business is in Tennessee, which

shows that Tennessee has a substantial relationship to the parties and the transaction.").

The Court next considers, and ultimately rejects, ATG's contention that relevant sections of the Agreement are contrary to fundamental California policy. (*See, e.g.*, ATG's MIL No. 4, at 10.) ATG has not met its burden. *See Ottman v. Anthem Life Ins. Co.*, No. SA CV 15-0434-DOC (RNBx), 2015 U.S. Dist. LEXIS 194374, at *6 (C.D. Cal. Oct. 15, 2015) (noting that, if either *Nedlloyd* prong is met, "the party opposing the choice of law provision bears the burden of establishing that the chosen state's law is 'contrary to a fundamental policy of California'" (quoting *Nedlloyd*, 3 Cal. 4th at 466)). ATG's reliance on California caselaw interpreting non-compete provisions—or contracts which include both non-compete provisions and non-solicitation provisions—is unavailing because the Agreement does not contain any non-compete clauses. (*Compare* ATG's MIL No. 1, at 8, *and* ATG's MIL No. 4, at 10–13; *with* Agreement.) ATG's other cases and arguments fail to support its broad assertion that "[i]t is beyond dispute that New Jersey's law with respect to non-compete and non-solicitation agreements is contrary to the fundamental policy of California." (ATG's MIL No. 4, at 10.) MaxLite's opposition provides numerous California and federal cases where courts held that California law permits non-solicitation and confidentiality clauses that threaten employer trade secrets or invite unfair competition. (*See* MaxLite's Opp'n to ATG's MIL No. 4, at 2–4.) *See, e.g.*, *Luck v. OTX Acquisition Corp.*, No. CV 10-1671 SVW (PJWx), 2010 WL 11595817, at *12 (C.D. Cal. Aug. 3, 2010) (citing California Court of Appeal cases for the proposition that "[w]hile a former employee is free to compete with his former employee, and indeed cannot be restricted from doing so under California Business & Professions Code § 16600, the former employee may not use confidential information or trade secrets in doing so." (cleaned up)).

ATG contends that, under the "governmental interest analysis," California would suffer a greater "comparative impairment if its laws are not enforced" because "California's domestic interest is materially greater than New Jersey's." (ATG's MIL No. 1, at 7–8 (internal quotation marks omitted).) However, the governmental interest

13

analysis only applies when a choice-of-law issue arises in a context where no valid choice-of-law clause exists. *See Power Integrations, Inc. v. De Lara*, No. 20-cv-410-MMA (MSB), 2020 U.S. Dist. LEXIS 52724, at *13–16 (S.D. Cal. Mar. 26, 2020) (describing two separate frameworks dependent upon whether a choice-of-law provision exists). Here, there is a valid choice-of-law provision and, for the reasons discussed above, the first prong of the *Nedlloyd* test is met.

The Court rejects ATG's contention that California law should apply because, "unlike New Jersey, California does not recognize the theory of inevitable disclosure." (ATG's MIL No. 1, at 8.) Under the theory of inevitable disclosure, "a plaintiff may prove a claim of trade secret misappropriation by demonstrating that [a] defendant's new employment would inevitably lead him to rely on the plaintiff's trade secrets." *SPS Techs., LLC v. Briles Aero., Inc.*, No. CV 18-9536-MWF, 2021 U.S. Dist. LEXIS 171484, at *30 (C.D. Cal. Sept. 8, 2021) (internal quotation marks omitted). Although ATG quotes *Arkley v. Avon Risk Services Companies, Inc.*, No. CV 12-1966 DSF (RZx), 2012 U.S. Dist. LEXIS 96332, at *7 (C.D. Cal June 13, 2012), to contend that "[c]ourts have held that the inevitable disclosure doctrine runs counter to fundamental California policies favoring mobility and competition," ATG does not explain how applying New Jersey law here would contravene these policies, (*see* ATG's MIL No. 1, at 8–9). ATG's reliance on *Power Integrations*, which applied California law because an applicable confidentiality clause was "predicated entirely on the wholly-rejected doctrine of 'inevitable disclosure,'" is equally unavailing. (*Id.* (quoting *Power Integrations*, 2020 U.S. Dist. LEXIS 52724, at *14).) In *Power Integrations*, the court noted that "California rejects the inevitable disclosure doctrine," but it ultimately held that the plaintiff failed to allege its breach claim because its allegations were "vague and conclusory, [and] devoid of facts showing *how* Defendants breached the confidentiality provisions." 2020 U.S. Dist. LEXIS 52724, at *45. Here, there is no indication that any of MaxLite's claims are predicated entirely on the theory of inevitable disclosure or any other doctrine contrary to California policy. (*See* ATG's

14

MIL No. 1, at 8–9.)

Nevertheless, even assuming *arguendo* that the Agreement violates a fundamental California policy, ATG has not shown that California has a materially greater interest than New Jersey in determining the claims before the Court. "In determining which state has a materially greater interest, California courts 'consider which state, in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied.'" *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1324 (9th Cir. 2012) (quoting *Brack v. Omni Loan Co., Ltd.*, 164 Cal. App. 4th 1312, 1329 (2008)). Here, New Jersey would be more significantly impaired if its law is not applied. MaxLite is a company incorporated in New Jersey, which evidences a strong public policy interest of New Jersey in protecting a business headquartered in the state from unfair business practices. *GlobeSpan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1234 (C.D. Cal. 2001) ("New Jersey common law expresses a substantial interest in setting the standards for fair business competition, including protecting its citizens from having their trade secrets stolen." (citing *Whitmyer Bros., Inc. v. Doyle*, 58 N.J. 25, 33 (1971)). As stated *supra*, the Agreement does not contain a non-compete provision, and ATG's cursory arguments fail to establish that the non-solicitation and confidentiality clauses conflict with fundamental public policy. Additionally, California law favors enforcement of valid choice-of-law clauses. *See, e.g.*, *Colaco*, 25 Cal. App. 5th at 1188. Accordingly, the choice-of-law provision in the Agreement is enforceable.

All but MaxLite's sixth and seventh claims are governed by New Jersey law. Under New Jersey law, courts review the language of a choice-of-law clause to assess whether it is broad enough to encompass contract claims, tort claims, or both. *See CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 301–02 (D.N.J. 2020). "Choice of law clauses that use the language 'governed and construed by' . . . are considered to be broad capturing both contract and tort claims, particularly tort claims that relate to the contract." *Id.* at 301 (quoting *Pro v. Hertz Equip. Rental Corp.*, No. 06-CV-3830 (DMC), 2008 U.S. Dist. LEXIS 100181, at *14 (D.N.J. Dec. 11, 2008));

1  *see Delaney v. Am. Express Co.*, No. 06-5134 (JAP), 2007 U.S. Dist. LEXIS 34699, at
2  *9 (D.N.J. May 11, 2007) (applying New Jersey law to all claims, including fraud,
3  flowing from a contract with language stating it was "governed by the laws of the state
4  in which it is delivered").

5  Here, the Agreement explicitly states that it is to be "governed by the laws of the
6  State of New Jersey." (Agreement § 18(f).) The broad "governed by" language used in
7  the Agreement indicates that New Jersey law should govern contract and tort claims
8  related to the Agreement. New Jersey law applies to MaxLite's first, second, fourth,
9  fifth, eighth, and ninth claims. (Compl. ¶¶ 67–72, 82–84, 89–91, 106–107, 113.)

10  MaxLite concedes that its sixth and seventh claims for intentional and negligent
11  interference with prospective business advantage are not tied to the Agreement and
12  therefore should be governed by California law. (MaxLite's Opp'n to ATG's MIL No.
13  1, at 8.) The Court agrees that California law applies to these claims.

14  The parties have not briefed whether California or New Jersey law applies to the
15  counterclaims. ATG's counterclaims for tortious interference, like MaxLite's claims
16  brought under similar legal theories, sound in tort and do not appear to be related to the
17  Agreement. Therefore, California law applies.

18  Finally, the Court declines to preclude evidence of the Agreement. The
19  Agreement rests at the heart of the claims and defenses in this case and may be admitted
20  in its entirety. The Court agrees with MaxLite that ATG's motion is a disguised motion
21  for summary judgment on the enforceability of provisions in the Agreement. (*See*
22  MaxLite's Opp'n to ATG's MIL No. 4, at 1, 3–5; *see also* Order Re: Jury Trial
23  § II(A)(1) (cautioning against disguised summary judgment motions at the motion in
24  limine stage).) Notwithstanding, for the reasons discussed above, the Court rejects
25  ATG's arguments concerning the invalidity of provisions in the Agreement.

26  **I.     ATG's Motion In Limine No. 2**

27  ATG seeks to exclude any reference or information pertaining to a patent
28  infringement case in this district, which settled last December. (ATG's MIL No. 2, at

4–7.)

The motion is granted on the basis that the probative value of the evidence outweighs its minimal relevance to this action. MaxLite submits that it would offer evidence verifying the existence of the patent case and the permanent injunction issued in that case as evidence of prior acts and other purposes under Rule 404. (MaxLite's Opp'n to ATG's MIL No. 2, at 1–3.) Whereas the parties settled the patent dispute via a confidential settlement, evidence of the patent case is likely to confuse the issues and mislead the jury on the issues to be resolved in this matter. Such potential outweighs the minimal value, if any, of admitting it. Fed. R. Evid. 403.

### J.  ATG's Motion In Limine No. 3

ATG seeks to exclude copies of non-original documents with the markings "Confidential" and/or "Attorneys Eyes Only" under Federal Rules of Evidence 402, 403, and 1002, claiming that they are not the best evidence, relevant, or intended for use at trial. (ATG's MIL No. 3, at 4–5.)

The Court denies the motion. The Court agrees with MaxLite that, because ATG does not contest the content or authenticity of the documents (apart from the mere fact that they are labeled as confidential), the purpose of the best evidence rule is not implicated here and is therefore inapplicable. (*See* MaxLite's Opp'n to ATG's MIL No. 3, at 4.) *See also United States v. Yamin*, 868 F.2d 130, 134 (5th Cir. 1989) ("The purpose of the best evidence rule . . . is to prevent inaccuracy and fraud when attempting to prove the contents of a writing."). The Court is equally unpersuaded by ATG's invocation of Rule 403. ATG argues without elaboration that it will suffer undue prejudice and the jury will be confused by the documents. (ATG's MIL No. 3, at 5.) MaxLite has shown that the documents have probative value that apparently outweighs any prejudice or confusion that may be caused by a document being labeled "confidential." The Court declines to further entertain ATG's cursory arguments. *See Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (declining to address an "argument . . . too undeveloped to be capable of assessment").

**III. OTHER MATTERS**

Given the Court's rulings on the motions in limine, the Court orders the following:

- The Court rejects the parties' proposed 15-day trial length. (Proposed FPTCO 1.) In setting the case schedule, the Court estimated that trial would take 3–4 days for this relatively straightforward case. (Order Re: Jury Trial § I.) The parties' pretrial submissions do not change the Court's estimate. Accordingly, the Court allots MaxLite, Wyatt, and ATG each 30 minutes to provide an opening statement and 45 minutes to provide a closing argument. MaxLite shall have a total of seven hours to present evidence, and Wyatt and ATG shall have a combined total of seven hours to present evidence. Wyatt and ATG may split their evidence presentation time by mutual agreement. Time spent cross-examining witnesses counts toward the party's limit. The Court expects that the parties will not need this much time to present the case to the jury.

- The Court denies the pending applications to seal without prejudice to their resubmission with more focused redactions. The parties' proposals for redacting and sealing hundreds of pages of documents exceed the scope of the protective order and are inconsistent with the "strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The Court directs the parties to be more surgical in their redactions and to submit for sealing only key proprietary information, financial and sales documents, confidential company trade secrets, and attendant discussion. The revised sealing applications are due by August 15, 2022.

- The Court orders the parties to meet and confer and submit a revised joint exhibit list, revised verdict form, and revised joint and disputed jury instructions by August 15, 2022. The parties should be careful to include relevant California and New Jersey model instructions—for example, the Court will need to instruct the jury on damages under both states' laws.

## IV. CONCLUSION

The Court orders as follows:

The Court **GRANTS** MaxLite's second, third, and fifth motions in limine, ATG's second motion in limine, and both parties' *Daubert* motions; **DENIES** ATG's first, third, and fourth motions in limine; **DENIES IN PART AND DEFERS IN PART** MaxLite's first motion in limine; and **GRANTS IN PART AND DEFERS IN PART** MaxLite's fourth motion in limine. The parties shall not introduce at trial testimony or reports from experts Robert A. Bonavito and Michael Saponara; testimony from Richard Green, Richard Watson, or Gabriel Peredo; evidence specific to or argument about the equitable claims; and evidence about the patent infringement action. MaxLite may treat David Wyatt, Li "Eric" Cai, Richard Matthews, and Arthur Tapia as hostile, adverse, or identified with an adverse party within the meaning of Federal Rule of Evidence 611(c)(2).

All decisions on motions in limine are subject to reevaluation at trial. *See* Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing . . . prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce v. United States*, 469 U.S. 38, 41–42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

///

The sealing applications are denied without prejudice to resubmission with more tailored sealing requests by August 15, 2022. The parties shall submit a revised joint exhibit list, revised verdict form, and revised joint and disputed jury instructions by August 15, 2022.

**IT IS SO ORDERED.**

Dated: August 7, 2022

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE